COMMONWEALTH *vs.* JOSE URENA.

No. 95-P-934.

Middlesex. October 15, 1996. - January 2, 1997.

Present: DREBEN, GILLERMAN, & JACOBS, JJ.

*Evidence,* Hearsay, Informer, Cross-examination. *Entrapment. Constitutional Law,* Confrontation of witnesses.

At a criminal trial the judge erred in admitting in evidence an out-of-court statement of an informant who had invoked, during the trial, his Fifth Amendment privilege against self-incrimination and who thus was not available for cross-examination; the violation of the defendant's right of confrontation under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights was not harmless and a new trial was required. [22-24]

INDICTMENT found and returned in the Superior Court Department on November 5, 1992.

The case was tried before *Robert H. Bohn,* J.

*Iris Alkalay* for the defendant.

*David C. Megan,* Assistant District Attorney, for the Commonwealth.

GILLERMAN, J. The defendant was convicted in the Superior Court of trafficking in 200 grams or more of cocaine, in violation of G. L. c. 94C, § 32E(*b*)(4). Over the defendant's objection, the judge admitted an incriminating, out-of-court statement made by an informant, Richard Hollander, who, earlier in the trial, had invoked his Fifth Amendment privilege against self-incrimination. The defendant has appealed, arguing that the judge's ruling on the out-of-court statement was erroneous and highly prejudicial.

The Commonwealth's case, presented through the testimony of Officer Sprague on direct examination, was essentially the following. On October 7, 1992, Hollander was arrested for possession of two kilograms of cocaine. Officer

Sprague, the arresting officer, questioned Hollander about the cocaine distribution scheme in which he was involved. As a result of that discussion, Hollander and Officer Sprague contacted the defendant to arrange a drug deal between Sprague and the defendant. During a series of three telephone calls, the first between Hollander and the defendant and the later two between Sprague and the defendant, it was agreed that the defendant would make a delivery of two kilograms of cocaine to Sprague later that evening. The defendant made the delivery to Sprague as arranged and was arrested.

The defense was entrapment. In support of that claim the defendant testified that the drugs he delivered to Sprague belonged to Hollander and he only agreed to make the delivery as a favor to Hollander and at his insistence. During the first telephone call Hollander asked the defendant to go to his house, pick up a package, and deliver it to Sprague, for which he would pay the defendant $125. The defendant testified that he told Hollander he did not want to make this delivery and only agreed to do so after being pressured first by Hollander and then by Sprague (acting incognito). The defendant testified that he had never previously been involved in the trafficking of narcotics and had never before been arrested.

The judge ruled that the defendant had presented evidence sufficient to raise the defense of entrapment, see *Commonwealth* v. *Tracey*, 416 Mass. 528, 535-536 (1993) ("The threshold for a defendant to raise the entrapment issue is low, but the defendant must show more than mere solicitation"). The Commonwealth then had the burden to prove beyond a reasonable doubt that there was no government inducement or that the defendant was predisposed to commit the crime. *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 47 (1992).

The prosecutor then recalled Officer Sprague (the Commonwealth's sole witness) to rebut the defendant's claim of entrapment. Over the defendant's objection,[1] Sprague, in rebuttal, testified that following Hollander's arrest he asked Hollander to name his source and that Hollander told him that his source was the defendant, Jose Urena.

In an earlier discussion of Sprague's proposed testimony

---

[1]In addition to the defendant's objection, the judge accepted the defendant's "continuing objection" to questions regarding Hollander's out-of-court statement as to his source for drugs.

regarding Hollander's out-of-court statement, the defendant had objected to the proposal and the prosecutor had argued that "it goes to predisposition. It's not being offered for the truth." Later, after the statement was admitted, the judge called counsel to the side bar and explained his ruling: "I overruled the objection because that information is not being admitted to this jury for the truth of the matter asserted in the statement itself, but rather as a means of challenging the credibility of the defendant when he testified to the effect that he was not involved on earlier occasions in drug trafficking . . . ."

In this court, the Commonwealth abandons the argument the prosecutor put forward in the trial court, and it does not attempt to defend the judge's ruling on the basis described by the judge.[2] The Commonwealth now argues, citing *Commonwealth* v. *Miller*, 361 Mass. 644, 659 (1972), that the judge was nevertheless correct because Hollander's statement was admissible, not for the truth of the statement that the defendant was Hollander's source, but to explain the state of the police knowledge that impelled the approach to the defendant.

*Commonwealth* v. *Miller, supra,* which permits an out-of-court statement to be admitted only for a nontestimonial purpose, is inapposite. While the judge in this case stated that he had not admitted the statement for its truth, in fact he did just that when he admitted the statement to challenge the defendant's testimony denying that he was involved in drugs at an earlier date. See note 2, *supra.* It is true, as the Commonwealth points out, that the judge offered a limiting instruction and that the defendant declined the invitation. Given the judge's statement of what he would tell the jury — that they could consider Hollander's statement to Sprague on

---

[2]Hollander's statement is relevant to the issue of predisposition only if it is offered and admitted for the truth of its assertion — that the defendant was Hollander's source. If the statement is believed to be true, the defendant's predisposition is established and the defense of entrapment evaporates. If the statement is not credited, it is irrelevant since the statement was not that of the defendant. Contrast a prior inconsistent or contradictory statement of a *witness* that is offered only to impeach that witness. See Liacos, Massachusetts Evidence § 6.6.2 (6th ed. 1994).

the issue of the defendant's predisposition[3] — the defendant's position was entirely defensible. See *Commonwealth* v. *Mc-Miller*, 29 Mass. App. Ct. 392, 407 (1990), quoting from *United States* v. *Webster*, 649 F.2d 346, 347 (5th Cir. 1981) ("[H]earsay evidence is only admissible in an entrapment case under the usual rules relating to hearsay, so that hearsay may not be introduced as evidence of predisposition"). Thus the case comes to us on the basis of an erroneously admitted hearsay statement to which the defendant objected.

Hollander's statement to Sprague, if credited, would severely undercut the defendant's entrapment defense. Moreover, the defendant could not respond to Sprague's testimony. On the first day of the trial, following the direct examination of Sprague, Hollander was examined on voir dire. Invoking his privilege under the Fifth Amendment to the United States Constitution, Hollander declined to answer all questions regarding the events in this case, and the judge ruled, citing *Commonwealth* v. *Gagnon*, 408 Mass. 185, 198 (1990), that Hollander would not be permitted to invoke that privilege before the jury. Thus, although Hollander was in attendance at the trial, the defendant would have no opportunity to cross-examine him. Further, the prosecutor knew from Hollander's testimony on voir dire that Hollander's out-of-court statement would not be subject to cross-examination before he elicited Sprague's rebuttal testimony.[4]

This total deprivation of the defendant's right of cross-examination regarding hearsay evidence violated the defendant's right of confrontation under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[5] See *California* v. *Green*, 399 U.S. 149, 193 (1970) (Brennan, J., dissenting) ("This Court has . . . explicitly held . . . that the Confrontation

---

[3]In his charge to the jury, the judge stated, "Mr. Hollander's alleged statement was admitted because the government claims it helps to show that the defendant was predisposed to commit this crime."

[4]Compare *Commonwealth* v. *Benoit*, 32 Mass. App. Ct. 111, 114 (1992) (where Commonwealth knows beforehand that its witness will provide no probative testimony but nevertheless puts the witness on the stand solely for the purpose of impeaching the witness by hearsay evidence, the testimony is inadmissible).

[5]Where proffered hearsay falls within a "firmly rooted exception to the hearsay rule," such as spontaneous exclamations, the right of confrontation may not prevail, see *White* v. *Illinois*, 502 U.S. 346, 356 (1992); *Com-*

Clause forbids the substantive use at trial of a prior extrajudicial statement, when the declarant is . . . unwilling to testify about the events with which his prior statement dealt"); *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 542 (1988) ("confrontation requires cross-examination in addition to a face-to-face meeting").

The admission of Hollander's statement constituted palpable error, see *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981), and, given the consequent deprivation of the defendant's constitutional right of confrontation, the error was not, as it must be under the test required for constitutional errors, harmless beyond a reasonable doubt. *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991).

The judgment must be reversed and the verdict set aside.

*So ordered.*

---

*monwealth* v. *Kirk*, 39 Mass. App. Ct. 225, 232 (1995), but the Commonwealth offers no such "firmly rooted" exception here.